UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────

ALICIA B. DENNIS,

                                            Plaintiff,

      v.                                                   **DECISION AND ORDER**
                                                                    14-CV-691S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                                            Defendant.

─────────────────────────────────────

       1.       Plaintiff Alicia B. Dennis challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since December 14, 2010, due to back pain, asthma, anxiety, depression, coronary artery disease, hypertension, obesity, and substance abuse. Plaintiff contends that her impairments render her unable to work. She therefore asserts that she is entitled to Disability Insurance Benefits ("DIB") or eligible for Supplemental Security Income ("SSI") under the Act.

       2.       On June 16, 2011, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner denied her application on October 18, 2011. Plaintiff requested a hearing on October 28, 2011. Pursuant to Plaintiff's request, ALJ Eric L. Grazer held a hearing on February 14, 2013. Plaintiff was represented by counsel at the hearing, where she appeared in person and testified. The ALJ considered the case *de novo*, and, on March 11, 2013, he issued a decision denying Plaintiff's application for benefits. On June 30, 2014, the Appeals Council

denied Plaintiff's request for review. Plaintiff filed the current civil action on August 22, 2014, challenging Defendant's final decision.[1]

3. On January 23, 2015, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 9). On March 20, 2015, Defendant filed her own Motion for Judgment on the Pleadings. (Docket No. 11). This Court took the motions under advisement without oral argument. For the reasons discussed below, Defendant's motion is denied, Plaintiff's is granted, and this case is remanded to the Commissioner for further proceedings.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence

---

[1] The ALJ's March 11, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.  The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7.  This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial

3

>   gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      While the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since June 3, 2010 (R. at 17, 19)[2]; (2) Plaintiff's back pain, asthma, anxiety, depression, coronary artery disease, hypertension, obesity, and substance abuse constitute "severe" impairments within the meaning of the Act[3] (R. at 19-20); (3) Plaintiff's impairments do not meet or medically equal any of the impairments listed in 20 C.F.R.

---

[2] Citations to the underlying administrative record are designated as "R."
[3] The ALJ found that Plaintiff's hypothyroidism and status post fracture of the right 5th metatarsal were non-severe impairments

Part 404, Subpart P, Appendix 1 (R. 20); (4) Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light level work (R. at 22); and (5) Plaintiff was unable to perform any of her past relevant work as a laundry worker. (R. at 26). Considering Plaintiff's status as a younger individual with a high school education; her unskilled past relevant work; her non-exertional limitations that require her to avoid concentrated exposure to respiratory irritants, including fumes, dust, and airborne particles, and limit her to simple work in a low contact and low stress environment; and her RFC for a significant range of light work, the ALJ determined that Medical-Vocational Rule 201.20 directed a finding of "not disabled." (R. at 22, 27). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of his decision, March 11, 2013. (R. at 28).

10. Plaintiff raises two challenges to the ALJ's decision, one of which requires remand. First, Plaintiff argues that the ALJ failed to properly evaluate her coronary artery disease in reaching his RFC finding. Second, Plaintiff argues that the ALJ improperly evaluated the opinion of Joshua Ball, her treating chiropractor. For the reasons discussed below, this Court finds that Plaintiff's first argument requires remand.

11. Plaintiff first argues that the ALJ failed to properly evaluate her coronary artery disease. In particular, Plaintiff argues that the ALJ impermissibly interpreted diagnostic evidence on his own, without supporting opinions from medical sources regarding functional limitations, and thus the ALJ's RFC finding is not supported by substantial evidence.

12. Plaintiff's coronary artery disease appears rather significant. On November 7, 2011, Plaintiff underwent an urgent quadruple bypass. (R. at 749). She required urgent surgery because she had 80% stenosis in her right coronary artery,

90% stenosis in her left coronary artery, and 80% stenosis at the takeoff of the second obtuse marginal branch. (R. at 749). After the surgery, Plaintiff received visiting nurse services for surgical aftercare until November 30, 2011. (R. at 664-713). An X-ray on December 1, 2011, revealed a bilateral pleural effusion, shortness of breath and cough, and that the transverse diameter of Plaintiff's heart was within normal limits. (R. at 764).

        13.    On March 27, 2012, an X-ray showed no evidence of active disease. (R. at 838). An echocardiography report of the same date showed normal systolic functioning in the left ventricle with an estimated ejection fraction in the range of 50% to 55%, mild regurgitation in the mistral valve, and mild-moderate regurgitation in the tricuspid valve. (R. at 837). On March 29, 2012, Brian Hill, a physician's assistant, noted a significant improvement. (R. at 767). Plaintiff reported feeling much better on June 21, 2012. (R. at 841). But on December 6, 2012, the most recent electrocardiogram in the record showed sinus tachycardia, possible left atrial enlargement, left ventricular hypertrophy, an abnormal ECG, and an ST and T wave abnormality with a need to consider inferior ischemia. (R. at 843). Plaintiff testified that she is still under the care of cardiologists at the Erie County Medical Center Cardiology Clinic. (R. at 171).

        14.    The administrative record contains only these progress notes and raw test results regarding Plaintiff's coronary artery disease. (R. at 776-843). There are no medical opinions explaining how Plaintiff's coronary artery disease affects her ability to perform work related exertional functions. In other words, no medical opinion supports the ALJ's RFC finding. Rather, the ALJ evaluated handwritten treatment notes and abnormal diagnostic testing on his own, which he is not permitted to do. For example, the ALJ states that Plaintiff's "heart was noted to be within normal limits" and cites notes

written by an X-ray technician. (R. at 24). The X-ray technician's notes actually state, "transverse diameter of the heart is within normal limits," which does not necessarily mean the heart overall is within normal limits. (R. at 764). In addition, the ALJ states that Plaintiff had an echocardiogram that noted possible inferior ischemia. (R. at 25). The ALJ cites the notes from the echocardiogram report, but ignores the additional notes of an abnormal ECG, sinus tachycardia, possible left atrial enlargement, left ventricular hypertrophy, and an ST and T wave abnormality. (R. at 843).

15.  "[I]t is not sufficient for the ALJ simply to secure raw data from the treating physician. What is valuable about the perspective of the treating physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed *opinion* as to the physical status of a patient." Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991). The record must have more than mere medical findings:

> [A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) ... [the Commissioner may not] make the connection himself."

See Deskin v. Comm'r of Soc. Sec., 605 F.Supp.2d 908, 912 (N.D.Ohio 2008) (quoting Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998)).

16.  Defendant argues that the ALJ's RFC finding does not need to track any single medical opinion. While this may be true, here there is no medical opinion at all supporting the ALJ's finding; this is not a matter of an ALJ's RFC finding simply diverting somewhat from the supporting medical opinion. See Matta v. Astrue, 508 Fed. Appx.

7

53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, the ALJ was entitled to weigh all evidence available to make an RFC finding that was consistent with the record as a whole).  This record contains only handwritten treatment notes and testing reports.  The Second Circuit has long recognized that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or . . . by a paralegal." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted).  Further development is necessary here.

17. Plaintiff asserts that this case is analogous to Skupien v. Colvin, where this Court found that a similarly incomplete record required remand. See No. 13-CV-403S, 2014 WL 3533425 at *5, *6 (W.D.N.Y. July 16, 2014).  Plaintiff is correct.  In Skupien, the ALJ discussed diagnostic tests and nursing records without relying on a medical opinion. Id. at *5.  This Court concluded that the ALJ's RFC assessment was therefore unsupported by substantial evidence, because there was no medical opinion relating the medical information to a specific RFC. Id.  As a result, the ALJ improperly evaluated raw medical data. Id.

18. Similarly, in this case, the ALJ discussed echocardiography reports, electrocardiogram reports, X-ray technician notes, and handwritten notes of a physician's assistant. (R. at 24-25). Then, without opinions from the medical professionals concerning the impact of these results on Plaintiff's RFC, the ALJ simply concluded that Plaintiff was capable of performing light work.  This was error.  The ALJ should have further developed the record with medical opinions relating to Plaintiff's coronary artery disease.  See Walker v. Astrue, No. 08–CV–0828(A)(M), 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) ("[w]ithout this additional medical evidence [,

the] ALJ . . ., as a layperson, could not bridge the gap between plaintiff's [impairments] the functional limitations that flow from these impairments"); Skupien, 2014 WL 3533425 at *6 ("[a]s a general rule, where the transcript contains only diagnostic evidence and no [supporting] opinion from a medical source about functional limitations . . . , to fulfill the responsibility to develop a complete record the ALJ must recontact [an acceptable medical] source, order a consultative examination, or have a medical expert testify at the hearing") (quoting Deskin, 605 F. Supp. 2d at 912).  Accordingly, remand is necessary to allow the ALJ to obtain further medical opinion evidence to consider in making his RFC findings.

19.  In addition to challenging the ALJ's RFC finding, Plaintiff also argues that the ALJ failed to properly evaluate the opinion of Joshua Ball, her treating chiropractor. This court offers no opinion on this argument at this time since the case is being remanded.  On remand, the ALJ is free to address this additional argument to the extent that he deems appropriate.

20.  After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision.  Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: July 15, 2016
       Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Judge